Theodore R. **ALLEN**, Petitioner-Appellant,

v.

E. P. **PERINI**, Superintendent, Marion Correctional Institution, Respondent-Appellee.

No. 71-1398.

United States Court of Appeals, Sixth Circuit.

April 6, 1972.

5. See note 4, *supra.*

David R. Hood (Court appointed), Detroit, Mich., for appellant.

Leo J. Conway, Columbus, Ohio (William J. Brown, Atty. Gen., Columbus, Ohio, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

PER CURIAM.

This is an appeal from the denial of a petition for habeas corpus. The District Court held an evidentiary hearing and denied the petition on its merits upon remand, following our determination that appellant had exhausted his state remedies. Allen v. Perini, 424 F. 2d 134 (6th Cir.), cert. denied, 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970). We affirm.

Appellant was originally charged in the state court with second-degree murder in the death of his wife in a domestic altercation. This offense is punishable by a mandatory life sentence in Ohio (Ohio Rev.Code Ann. § 2901.05). After consulting with his lawyer, he entered a plea of not guilty by reason of insanity. He was then admitted to a state mental institution for observation and examination and was subsequently pronounced sane by officials of that institution. Upon the advice of his attorney, appellant then changed his plea to guilty to the reduced charge of manslaughter, which is punishable by imprisonment for a term of one to twenty years. Ohio Rev.Code Ann. § 2901.06. He was sentenced to this term, with credit for time already served, and was paroled approximately ten months later. However, he subsequently violated his parole and was recommitted to the state prison, where he is still confined.

Appellant's petition alleged that his guilty plea was not made intelligently, knowingly, and voluntarily, and that he had not received effective assistance of counsel. The District Court conducted an evidentiary hearing and rejected these contentions. He held that appellant had not sustained his burden of

proving that the assistance he received from counsel was incompetent or that appellant's plea was rendered involuntary because of the attorney's claimed failure to consider possible trial defenses, to conduct a thorough investigation of the case, or to advise appellant concerning the alternatives available to pleading guilty to manslaughter. The court stated, after reviewing the evidence:

. . . there is not a scintilla of evidence to show that the proceedings leading to petitioner's incarceration were a farce. In every aspect in which it was contradicted, petitioner's testimony was unquestionably shown to be false. This at least casts doubt upon his uncontradicted testimony that his court-appointed counsel was only interested in money, and since petitioner lacked this, forced him to plead guilty to a charge that could easily have been beaten. Not so. Petitioner was in danger. His attorney made a good plea bargain for him, regardless of motives. And if ultimately the bargain has cost the petitioner more dearly than the attorney indicated it would, that is not because petitioner did not get earlier parole, as his attorney promised, but because petitioner violated his parole after he got it. The attorney can hardly be faulted for that.

Appellant's contentions on this appeal are bottomed on an alleged lack of effective representation by counsel. With respect to the voluntariness of the guilty plea, appellant argues as follows: certain oral and written statements that he made to the police following the fight were given without benefit of the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); it was the existence of these statements that prompted his decision to plead guilty because he was unaware of any other evidence against him; his lawyer told him that there was nothing that could be done about these statements, i. e., that the statements could not be suppressed at trial; his lawyer failed to investigate and research other possible defenses such as self-defense or lack of causation between the blow struck by appellant and the death of his wife (she died of cardiac arrest on the operating table the day after the fight); his lawyer told him that he would not represent him in a trial for second-degree murder because he (appellant) did not have enough money to pay for such representation; therefore, under the standards enunciated in McMann v. Richardson, 397 U.S. 759, 768–769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), appellant was so incompetently advised and represented by counsel that he could not knowingly and voluntarily waive his right to challenge his involuntary confession, which in turn renders his plea involuntary. Appellant alludes to these same events to support his further contention that he was denied the effective assistance of counsel guaranteed under the Sixth Amendment.

Assuming *arguendo* that appellant's *Miranda* rights were violated and that the statements obtained from him in violation of *Miranda* could have been suppressed at trial, nevertheless, we agree with the District Court that appellant has not sustained his burden of proving his plea involuntary or his representation ineffective. The record of appellant's guilty plea shows that appellant was carefully questioned at length by the trial judge concerning the voluntariness of the plea and that appellant's counsel was prepared to go to trial immediately if the charge were not reduced to manslaughter. It is by no means certain that appellant, had he been tried on the second-degree murder charge, would have been acquitted or convicted only of manslaughter. Predicting the outcome of criminal trials is, at best, an uncertain undertaking. Unquestionably, statements that appellant made at the police station before the police obtained the confessions that he challenges under *Miranda* would have been admissible at trial, and these statements clearly linked appellant with infliction of the injury. Moreover, according to appellant's testi-

mony at the hearing below, he had gone to his wife's home upon her request, after having been told not to see his wife by officials of a mental institution to which he had been committed intermittently before the fatal fight. He stated that he was carrying tools with him because he had been on his way to fix a friend's car. He further testified that he struck her only after she had attacked him, although he admitted that he did not see any weapon in her hands when he struck her. In these circumstances, it is possible, even if improbable as he contends, that appellant would have been convicted by a jury of second-degree murder. The possibility increases when we consider the fact that appellant's testimony at the habeas corpus hearing was effectively impeached with respect to many important points. This suggests that the state might have been able to impeach appellant's version of the fight and convince a jury that appellant was guilty of second-degree murder.

In any event, it is speculation to say, on the basis of the record before us, that appellant pleaded to the only charge upon which he could have been convicted. Nor can we say that the District Court's conclusions concerning the adequacy of the advice rendered by appellant's counsel are clearly erroneous. Appellant's uncorroborated and often-impeached testimony was discredited by the District Court; the transcript of both the state hearing and the habeas corpus hearing indicate that appellant's counsel was familiar with the facts and background of the case, was present at the critical stages of the proceedings, and gave advice that "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, *supra*, 397 U.S. at 771, 90 S. Ct. at 1449. We agree with appellee that appellant's counsel made the best of a bad situation and conclude that the evidence simply does not support appellant's contention that his attorney did not make a good-faith evaluation of his chances at trial. The fact that the attorney may not have considered the possibility of a *Miranda* defense or, if he considered it, the fact that he did not think that this possibility outweighed the danger to appellant of being convicted for second-degree murder does not, without more, establish the involuntariness of appellant's plea. We believe that appellant has not sustained his burden of proving that he did not receive the "reasonably competent advice" contemplated by the Supreme Court in McMann v. Richardson.

■ What we have said above is sufficient to dispose of appellant's Sixth Amendment claim. Appellant's testimony at the hearing below, when compared with the testimony of appellee's witnesses and the transcripts of the hearings on both of appellant's state-court pleas, does not establish that his attorney's representation was "a farce and a mockery of justice shocking to the conscience of the court." Holnagel v. Kropp, 426 F.2d 777, 779 (6th Cir. 1970). Since the attorney did not testify in the hearing below, we have no way of knowing precisely what he did or did not do, and the fact that he did not interview the police officers who were at the police station during appellant's alleged custodial interrogation does not establish that the attorney conducted no investigation or research. The fact that it might have been the wiser course to go to trial is not determinative (and, of course, is purely speculative); "[e]ffective assistance of counsel does not mean that every mistake of judgment or misconception of the law [deprives] an accused of a constitutional right." Holnagel v. Kropp, *supra*, 426 F.2d at 779. Our review of the record convinces us that the District Court justifiably concluded that appellant's attorney adequately served his client's interests.

Affirmed.