Frederick H. DUNKER, Jr.,
Petitioner-Appellant,

v.

Douglas VINZANT, Respondent-
Appellee.

No. 74-1166.

United States Court of Appeals,
First Circuit.

Argued Sept. 6, 1974.

Decided Nov. 1, 1974.

Catherine Clement, Mass. Defenders Committee, Boston, Mass., for petitioner-appellant.

Barbara A. H. Smith, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., and David A. Mills, Asst. Atty. Gen., Chief Appellate Section, Boston, Mass., were on brief, for respondent-appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and CLARY*, District Judge.

COFFIN, Chief Judge.

The appellant, indicted in Massachusetts for murder in the first degree, was tried and convicted of murder in the second degree. He sought a writ of habeas corpus from the district court and appeals from the denial of that relief.

Appellant's claim is that the closing argument of his counsel was so ineffective as to constitute an admission of guilt. The appellant does not challenge the thoroughness of his attorney's preparation or the adequacy of his prior experience, see Rastrom v. Robbins, 440 F.2d 1251 (1st Cir. 1971), nor does he claim any failure to cross-examine prosecution witnesses or to present defense witnesses. Indeed, he concedes the adequacy of representation up to the point of closing argument. Appellant asks us to reexamine our "farce and mockery" standard for effective assistance of counsel [1] and apply instead the standard that requires "reasonably competent assistance of [counsel] acting as his diligent conscientious advocate." [2] Under

---

* Sitting by designation.

[1.] Moran v. Hogan, 494 F.2d 1220 (1st Cir. 1974) ; Bottiglio v. United States, 431 F.2d 930 (1st Cir. 1970). This test has been said to rest on the theory that the ineffectiveness claim is grounded in the due process clause. See, e. g., United States v. DeCosta,

159 U.S.App.D.C. 326, 487 F.2d 1197, 1202 (D.C.Cir. 1973).

[2.] United States v. DeCosta, 159 U.S.App.D. C. 326, 487 F.2d 1197, 1202 (1973). Although the standard has been articulated somewhat differently by the circuits which have adopted it, they all agree that the

the latter standard, appellant argues, the closing argument of his attorney at trial fell measurably below the acceptable level.

Although adequacy of representation until the penultimate moment was conceded, the court has carefully reviewed the entire trial transcript, the closing arguments, and instructions of the judge, in addition to the several cases which have passed on this matter already. Having done so we find that the representation provided did not fall below either standard of effectiveness.

The trial out of which this claim arises took place over a period of seven days. The case presented by the prosecution relied primarily on the victim's dying accusation of the defendant and the statement of two prisoners who were in jail with the defendant and testified that he had confessed to them. This was countered by alibi evidence that the defendant was forty miles away with relatives and friends at the time of the fatal shooting. The verdict turned entirely on the jury's assessment of the credibility of the witnesses. Trial counsel carefully and aggressively attacked the prisoner-witnesses, asking them if they were known as "stoolies" and if the other prisoners had such strong feelings against them that they had to be segregated from the regular prison population. He objected strenuously and repeatedly to the admission of the dying declaration and argued to the court that the victim did not have reason to believe he was dying and in fact lived for several days after the shooting.

In beginning the presentation of his client's case, trial counsel indicated a preference for avoiding long dissertations to the jury and said, instead, that he preferred the testimony itself to weigh most heavily. He put forward alibi witnesses and the defendant in a cogent presentation of the defense. The closing argument was relatively short, covering approximately twenty-three pages of trial transcript. Appellant relies on a small portion of the whole:

"Now, under our law, no man is permitted to go to trial without being represented by counsel. By counsel I mean a lawyer. You know that. And I was appointed by the Court to do this. And I am just as obligated to him as a court appointed lawyer as if he had paid me a tremendous fee. And I must exert every bit of experience, acumen, skill and artistry that I possibly can to prove his innocence.

"Now I am sure that during the course of your lives you have put a question to a fellow or somebody else who was trained to legal terms. Supposing a man comes to you and he says he is guilty of a crime, shall you defend him? And you know, Mr. Foreman and ladies and gentlemen of the jury, that has been on the bar examination so many times it is ridiculous. Your duty is—if you answer no, you flunk. You must answer you must defend him because it is the duty of the Commonwealth to prove that he is guilty beyond a reasonable doubt. And if you don't do that, you are remiss in your duty and you are not an advocate; neither are you a lawyer."

This portion is quoted to us by the appellant, but it is followed by the conclusion "the defendant steps before you innocent".

Subsequently having argued throughout the trial that the dying declaration was not like the testimony of a witness because it could not be challenged, he summarized in closing:

"You even have a situation that went so far as when the defendant was ap-

standard is based on the requirements of the Sixth Amendment. *See* Beasley v. United States, 491 F.2d 687 (6th Cir. 1974) ; West v. Louisiana, 478 F.2d 1026 (5th Cir. 1973). *See also* United States v. Hayes, 444 F.2d 472 (5th Cir.), cert. denied, 404 U.S. 882, 92 S.Ct. 210, 30 L.Ed.2d 163 (1971) ; Moore v. United States, 432 F.2d 730 (3d Cir. 1970) (en banc) ; Coles v. Peyton, 389 F.2d 224, 225 (4th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968).

prehended, that the man who was deceased, Crowley, was still alive; still aware of his circumstances; and there could have been a confrontation.

"Mr. Foreman, ladies and gentlemen of the jury, if that happened, we wouldn't be here. Couldn't be here. I take that back. We could be here because it would still be my duty to defend this man if I was appointed by the Court and defend him to the best of my ability.

"And even if there were three choices; plead the man guilty, plead him not guilty and try him, or refuse to take the case; what do you think my duty is? I will tell you what it is. I must take that case, plead him not guilty and defend him, because it is not my duty to prove that he is not guilty."

These quoted passages were indeed maladroit, and the entire argument was, as the Supreme Judicial Court of Massachusetts observed, "disjointed". Commonwealth v. Dunker, Jr., 1973 Mass. Adv.Sh. 981, 985, 298 N.E.2d 813 (1973). The references to court appointment were, to say the least, questionable strategy.[3] But the arguments followed a seven day trial accurately characterized by the Supreme Judicial Court as "hard fought" where counsel on each side may have "manifested an excess of zeal". As for the words themselves, no direct admission of guilt can be claimed; at most they might permit an inference of such a conclusion. But when read in context, we must agree with the Massachusetts court that "when the evidence was all in, there was no rational basis for the jury to believe that the defendant, who testified, and his counsel were not contesting the Commonwealth's case fully and wholeheartedly to the end." Commonwealth v. Dunker, Jr., —— Mass. at 984, 298 N.E.2d at 816. That court found that the remarks were addressed to the issue of burden of proof. We agree.

We note that in reaching this conclusion the district court below and the Massachusetts court employed the standard which the appellant asks us to apply. The Supreme Judicial Court has recently elucidated its standard in effectiveness of counsel claims:

"[W]hatever the attempted formulation of a standard in general terms, what is required in the actual process of decision of claims of ineffective assistance of counsel, and what our own decisions have sought to afford, is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel—behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer—and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense. Commonwealth v. Libby, 358 Mass. 617, 621–622, 266 N.E.2d 641 (1971). Commonwealth v. Bernier, 359 Mass. 13, 19–24, 267 N.E.2d 636 (1971)." Commonwealth v. Saferian, —— Mass. ——, 315 N.E.2d 878 (1974).

The appellant has had the extraordinary opportunity of having three courts pass upon the facts he presented, applying the demanding standard of examination he sought to impose. It is the factual circumstances of his case, not the application of a lenient legal standard that disentitle him to relief.

Affirmed.

---

3. If this were a matter under our supervisory power we would be strongly inclined to proscribe such references.