UNITED STATES of America, Appellee,

v.

Carlos Alberto MADRID RAMIREZ,
Defendant-Appellant.

No. 74–1440.

United States Court of Appeals,
First Circuit.

April 21, 1976.

Michael J. Osman, Miami, Fla., with whom Neal R. Sonnett and Bierman, Sonnett, Bailey & Osman, P. A., Miami, Fla., were on brief for defendant-appellant.

Jorge Rios Torres, Asst. U. S. Atty., Bayamon, P. R., with whom Julio Morales Sanchez, U. S. Atty., and Otto J. Riefkohl, II, San Juan, P. R., were on brief for appellee.

Before COFFIN, Chief Judge, MATTHES * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

On February 27, 1967, appellant was convicted by a jury on both counts of an indictment charging him with fraudulently and knowingly importing cocaine and marijuana into the United States in violation of 21 U.S.C. §§ 171, 173, 174 and 176a (1964).[1] After his conviction appellant failed to appear for sentencing. After a long interval he was returned to the jurisdiction and was sentenced on November 20, 1974; he now appeals his conviction.

The factual circumstances underlying the charges against appellant are essentially undisputed and were stipulated at trial. On March 4, 1966, appellant arrived at the international airport in Isla Verde, Puerto Rico on a flight from Bogota, Columbia where he had stayed for two days at the Hotel Tequendama. Among his items of luggage he carried three suits, each

---

* Of the Eighth Circuit, sitting by designation.

1. During the period prior to this appeal, these statutes were repealed. See Pub.L. 91–513, Title III, § 1101(a)(2), (4), and (9), 84 Stat. 1291 (Oct. 27, 1970).

wrapped in a separate plastic cover. When customs officials searched the suits they found a vial containing 5.8 grams of cocaine in the pocket of one suit and two airmail envelopes containing marijuana in the pockets of each of the other suits. One of the envelopes contained about 9 grams of marijuana and the other, which was marked "Hotel Tequendama, Bogota, Columbia", contained about 8.5 grams of marijuana. No drugs were found on appellant's person or in his hand luggage. At trial, he took the stand in his own defense, denied that the drugs were his or that he had any knowledge of their presence. Three character witnesses also testified on his behalf. The theory of his defense was essentially that he did not knowingly have possession of the drugs, and that since the suits were hung on board the airplane in a luggage area to which all passengers had access, other persons could have deposited the drugs in the pockets of the suits.

 Appellant's initial contention is that the trial judge erred in failing to instruct the jury on the legal definition of "possession." Since appellant made no objection to this instruction pursuant to F.R. Crim.P. 30, the standard of review on appeal is plain error. F.R.Crim.P. 52(b); *United States v. Stamas,* 443 F.2d 860, 861 (1st Cir.), *cert. denied,* 404 U.S. 851, 92 S.Ct. 86, 30 L.Ed.2d 90 (1971). Appellant claims that the error alleged here met the standard because, having stipulated to the presence of the drugs in the suits he was carrying, the only real issue remaining for his defense was whether he properly had possession. He stresses further that the fail-

ure to instruct on the definition of possession was especially prejudicial since the provisions under which he was charged contain statutory presumptions making unexplained possession of drugs sufficient evidence for conviction.[2] We do not find this claim persuasive. The omission of an allegedly necessary instruction does not amount to plain error if the instructions examined in their entirety adequately protected appellant. *United States v. Stokes,* 506 F.2d 771, 777 (5th Cir. 1975); *United States v. Billingsley,* 474 F.2d 63, 66 (6th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973). Here, the trial judge clearly explained to the jury that before they could find appellant guilty of the charges the government had to show not only that he had narcotics in his possession but also that he imported the drugs into the United States "knowingly and fraudulently." The judge then went on to define these terms in detail,[3] and repeated them whenever he referred to the concept of possession. In these circumstances and in view of the fact that this case did not involve "a particularly sensitive defense," nor were "the facts adduced at trial . . . so complex and confusing that an understanding of the issues would be beyond the grasp of the jury," *United States v. Leach,* 427 F.2d 1107, 1112–13 (1st Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970) we conclude that the trial court's instructions were not improper.

Appellant also objects to the form of the prosecution's inquiry of a defense character witness on cross-examination. Appellant introduced three character witnesses of whom the prosecution cross-examined only

**2.** Title 21 U.S.C. § 174 (1964) provided, in pertinent part:

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury."

The relevant portion of § 176a provided:

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed suffi-

cient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

**3.** The court's instructions with regard to these terms were as follows:

"Knowingly means intentionally and voluntarily, and not because of mistake or accident or with other innocent reason. Fraudulently . . . means with an evil purpose, to evade the law, and with the specific intention to deceive or evade for the purpose of bringing about some gain or financial gain to one's self."

the first, Manuel A. Font. During this cross-examination the prosecutor inquired about when the witness had first learned of the drug charge against appellant then being tried, and also asked about the witness' knowledge of appellant's prior conviction for another offense. Appellant claims to have been prejudiced by the fact that the prosecutor's questions took the form of "Do you know?" instead of "Have you heard?". He also complains that the trial judge failed to ascertain outside the jury's presence whether the prior conviction inquired about by the prosecutor represented an actual event. In addition, he contends it was error for the judge not to give a cautionary instruction to the jury concerning the limited purpose of such cross-examination. However, appellant made no objection to these matters at trial. Consequently, we will review these claims only for plain error.

■ With regard to the form of the prosecutor's questions on cross-examination, appellant points to the following language in *Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168, 177 (1948), the leading Supreme Court case on reputation testimony by a character witness:

"Since the whole inquiry * * * is calculated to ascertain the general talk of people about defendant, rather than the witness' own knowledge of him, the form of the inquiry, 'Have you heard?' has general approval, and 'Do you know?' is not allowed." (Footnote omitted)

We must first note, however, that this language appears to represent a summary of existing authority, rather than a direct proscription by the Court of questions in such form.[4] Even assuming the Court intended to enunciate a prohibition, it is unclear whether the cross-examination here, when examined in context exceeded permissible bounds. After initial queries to witness Font as to the frequency of his contact with appellant, the prosecutor's cross-examination essentially followed the format of questions based on what the witness had "heard."[5] Consequently, whether the questions as phrased were erroneous—an issue we do not decide—the harm to appellant was insubstantial.

■ Nor are we persuaded by appellant's contention that it was reversible error for the trial judge not to have checked outside of the jury's presence whether the reference to prior misconduct by appellant was based on an actual event. As the Supreme Court noted:

"Both propriety and abuse of hearsay reputation testimony, . . . depend on numerous and subtle considerations . . . and therefore rarely and only on clear showing of prejudicial abuse of

Q. Do you know if he was ever in jail?
A. No.
Q. Do you know if he was ever tried in Miami?
A. No.
Q. You never did hear about that?
A. No, not while I was there.
Q. I mean in 1963.
A. No, in 1963, I saw him here, I wasn't in Miami then, I was in San Juan."

As this testimony indicates only two questions were posed in the "Do you know?" form, and even as to these the subsequent inquiry on the same point was couched in the more correct format, viz. "You never did hear about that?" In light of these facts it would appear that any error in the form of the question was insubstantial and not a cause of harm to appellant.

4. For example, with regard to cross-examination the Court noted that "A character witness may be cross-examined as to an arrest whether or not it culminated in a conviction, *according to the overwhelming weight of authority.*" (Footnote omitted; emphasis supplied). 335 U.S. at 482, 69 S.Ct. at 221, 93 L.Ed. at 177.

5. "Q. Did you hear about the charge he had pending here in this Court?
A. No.
Q. You never did hear about it?
A. The charge here in court? No.
Q. The case that we are trying now?
A. No, in 1963, no.
Q. Well, but now.
A. Now, yes.
Q. When did you first hear about it?
A. He told me himself.
Q. When?
A. About eight months ago, something like that.

discretion will Courts of Appeals disturb rulings of trial courts on this subject." (Footnote omitted). *Michelson v. United States, supra* at 480, 69 S.Ct. at 220, 93 L.Ed. at 176.

Here the record indicates that the district court monitored the cross-examination of witness Font with reasonable care, and, in fact, struck a question and answer that were improperly phrased. Furthermore, although the trial court ordinarily ought to ascertain out of the presence of the jury that the misconduct inquired about on cross-examination referred to an actual event, *Michelson v. United States, supra* at 481 & n. 18, 69 S.Ct. at 221, 93 L.Ed. at 176, here, since the event in question was an actual conviction in the recent past, appellant was not prejudiced by the admission of this testimony. *See Goodman v. United States,* 273 F.2d 853, 859 (8th Cir. 1960).

We likewise reject appellant's complaint that it was error for the trial judge, in the absence of a request, not to give a cautionary instruction to the jury concerning the limited purpose of such cross-examination. While it is considered better practice to provide such limiting instructions, *see Michelson v. United States, supra,* 335 U.S. at 472, 484–85, 69 S.Ct. at 222–23, 93 L.Ed. at 178; *United States v. Lewis,* 157 U.S.App.D.C. 43, 482 F.2d 632, 638 (1973); *Gross v. United States,* 394 F.2d 216, 221 (8th Cir. 1968), *cert. denied,* 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970), and one which we think ordinarily should be observed, we do not think the absence of such instructions here was damaging to appellant. Only one of his three character witnesses was cross-examined, and then only in a limited fashion. Moreover, appellant, who himself testified in detail about his prior conviction and the fact that it was not for a narcotics offense, requested no limiting instruction regarding its consideration. In these circumstances and in light of the "wide discretion" and flexibility necessarily accorded trial courts in these matters, *Michelson v. United States, supra* 335 U.S. at 480, 69 S.Ct. at 220, 93 L.Ed. at 176; *United States v. Lewis, supra* at 642, we cannot say

the trial court's action in this regard was plainly erroneous.

Appellant also contends that the ineffectiveness of his retained counsel deprived him of his sixth amendment rights. In support of this claim he points to a large number of alleged errors; we highlight only the most significant. He complains that his attorney failed to object on various occasions to hearsay and damaging immaterial responses of government witnesses; that he undermined appellant's credibility by presenting evidence through direct examination of appellant on the prior misdemeanor conviction; that he failed to request an instruction on the definition of possession; and that he "confounded" and "confused" the jury, failing to make clear appellant's "lack of knowledge" defense. After examining these alleged short-comings in light of the entire record we do not find substance to appellant's claim. Effectiveness of counsel is not to be judged by hindsight. *Allen v. VanCantfort,* 436 F.2d 625, 630 (1st Cir. 1971). Appellant's counsel clearly developed the defense position that there were other means not within appellant's control or knowledge by which narcotics could have been placed in the pockets of the suits either in Colombia or on board the aircraft. Counsel presented evidence to show that appellant was a frequent traveler to Colombia and aware of customs practices and hence would be unlikely to participate in narcotics traffic. And in his summation to the jury he clearly set forth the defense theory that there was "doubt as to if [appellant] actually, knowingly imported into the United States the cocaine and marijuana." Moreover, counsel appropriately tendered a number of evidentiary objections and moved for judgment of acquittal, *see United States v. Stamas, supra* at 863. Ineffective counsel in this circuit means representation such as to make a mockery, a sham or a farce of the trial. *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir. 1974); *United States v. Benthiem,* 456 F.2d 165, 167 (1st Cir. 1972); *Bottiglio v. United States,* 431 F.2d 930, 931 (1st Cir. 1970). While we have considered adopting a more

lenient standard requiring "reasonably competent assistance of counsel", *Dunker v. Vinzant,* 505 F.2d 503 (1st Cir. 1974), *cert. denied,* 421 U.S. 1003, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); *cf. also McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974), appellant's contentions do not approach a violation of either standard.

▬ Finally, appellant contends that the failure of the sentencing judge to continue the date of sentencing in order to allow his newly retained counsel to appear was an abuse of discretion requiring a remand of his case for resentencing. More particularly, he claims that he received notice of his sentencing date only two days prior to the hearing which left insufficient time to permit his new counsel to come to Puerto Rico from Miami, Florida, and that consequently he was denied effective assistance of counsel at sentencing. However, this claim cannot avail. Appellant was represented at sentencing by his original trial counsel whom he had requested to be present. And while the court has a duty to give consideration to a defendant's wishes with respect to representation as long as the expeditious handling of his case is not impeded, *Marxuach v. United States,* 398 F.2d 548, 551 (1st Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968), here, where appellant left the jurisdiction after his conviction and was absent for seven years, it was not improper for the judge to deny the continuance and to proceed promptly with sentencing.

*Affirmed.*