UNITED STATES of America

v.

John UNDERWOOD, Petitioner.

Civ. A. No. 77–0299.

United States District Court,
D. Rhode Island.

Nov. 3, 1977.

William A. Dimitri, Jr., Asst. U. S. Atty., Providence, R. I., for plaintiff.

John Underwood, pro se.

## OPINION

PETTINE, Chief Judge.

The petitioner, John R. Underwood, presently incarcerated in the U.S. prison in Atlanta, Georgia, was convicted in this Court, J. Day presiding, on February 20, 1976 for the unlawful distribution of a schedule II narcotic drug controlled substance, cocaine, in violation of 21 U.S.C. § 841(a)(1). He was sentenced on June 30, 1976 to five years, with a special parole term of at least three years in addition. The First Circuit affirmed that conviction 553 F.2d 91 (1st Cir. 1977) (per curiam). The Supreme Court denied certiorari on March 28, 1977, 430 U.S. 950, 97 S.Ct. 1590, 51 L.Ed.2d 799.

Petitioner now brings suit attacking his sentence under 28 U.S.C. § 2255 (1970)

alleging that his conviction was based on illegally seized evidence, that he was denied the effective assistance of counsel, that the prosecution suppressed exculpatory evidence, that his sale of cocaine to a government agent, for which he was convicted, was the result of entrapment, and that he was convicted on perjured testimony.

Upon review of Mr. Underwood's petition and his accompanying memorandum, the objection and memorandum of the U.S. attorney and the trial transcript, and after a conference on the record with the prosecution and defense attorneys, this Court finds that no genuine or crucial issue of fact requires resolution nor is a further expansion of the record or evidentiary hearing required pursuant to Rules Governing § 2255 Proceedings for the U. S. District Courts, R 7, 8 (Sept. 28, 1976). *See Miller v. U. S.,* 564 F.2d 103, at 105–106 (1st Cir. 1977). This Court finds that the petitioner is not entitled to relief.

*Entrapment*

■ Petitioner's claim of entrapment is without merit. The issue was squarely presented to the jury and then squarely put in issue on appeal. After reviewing his claim of entrapment, the First Circuit affirmed the conviction. When an issue has been dispositively determined by appeal, it is thereafter foreclosed. *Boeckenhaupt v. U. S.,* 537 F.2d 1182 (4th Cir. 1976), *cert. denied* 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142; *Meyers v. U. S.,* 446 F.2d 37, 38, 38 n. 1 (2d Cir. 1971); *Clayton v. U. S.,* 447 F.2d 476 (9th Cir. 1971). *But cf. Kaufman v. U. S.,* 394 U.S. 217, 230–31, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

*Illegal Search and Seizure*

Petitioner claims that following his arrest on June 24, 1975, police officers made a warrantless search of his apartment, resulting in an illegal seizure of cocaine.

According to the testimony of both arresting officers and petitioner, petitioner agreed, on June 24, to sell approximately two ounces of cocaine to Drug Enforcement Administration Agent Herbert J. Lemon,

Jr., whose true identity was unknown to petitioner at the time. Both petitioner (Transcript at 310) and Agent Lemon (Transcript at 58) testified that petitioner handed approximately two ounces of cocaine to Agent Lemon, while the two voluntarily met in petitioner's apartment on the third floor of a multi-unit apartment building. Agent Lemon then requested petitioner to accompany him downstairs to collect the payment from his "moneyman", really Agent McCarthy, who was waiting just outside the front door of the apartment building (Transcript at 58, 243, 315). More officers arrived and petitioner was arrested. He was then taken back upstairs to his third floor apartment. Petitioner testified that he was handcuffed by the time he reached his apartment. (Transcript at 315). Petitioner now contends that police officers searched his apartment and seized cocaine in addition to that amount he voluntarily gave Agent Lemon. The testimony of the arresting officer, Agent McCarthy, tends to corroborate petitioner's account. (Transcript at 253–56).

The cocaine allegedly illegally seized, however, was not the basis of the indictment nor was it admitted into evidence directly as a full exhibit. Count four of the indictment, the only charge for which petitioner was convicted, was based only on the cocaine petitioner handed to Agent Lemon. However, evidence of the allegedly illegally seized cocaine was placed before the jury by the testimony of Agent Lemon when he stated that he sent the samples of substances obtained from petitioner or petitioner's apartment for chemical analysis (Transcript at 59–60). He testified, upon examination by the Assistant United States Attorney:

Q   Could you tell the jury and the Court exactly what you sent down to New York at that time?

A   Yes, sir. I sent down three separate exhibits: one exhibit would be the two ounces of cocaine—

The Court: Two ounces?

The Witness: Yes, sir.

A (Continued)—that Mr. Underwood handed to me on that date. I also sent down the clear plastic baggie that he had shown me behind the bar that contained cocaine, and additionally I sent down the other small package that he told me had cocaine, I sent all three of these to our lab in New York.

Defense counsel did not object to this testimony. He did object to the prosecution's request that the lab request forms Agent Lemon wrote to accompany the seized evidence be marked for identification only. He objected that the evidence was illegally seized and that even marking for identification would be "cumulative" and "prejudicial" (Transcript at 62). The Assistant United States Attorney conceded that defense counsel's objection might be well-founded if the forms were admitted as a full exhibit. The Court did not finally rule but permitted the items to be marked for identification "until we see" (Transcript at 63).

Defense counsel did not move to suppress the cocaine prior to trial, as required by Fed.R.Crim.P. 12(b)(3). Nor did counsel move to suppress the testimony of Agent Lemon at trial. Although defense counsel did object at trial, he failed to press the Court for a ruling. If these failures constitute an inexcusable "waiver" of his fourth amendment rights, this Court cannot now examine, pursuant to § 2255, the petitioner's fourth amendment claim.

In determining whether the defense counsel waived the constitutional claim, the Court has looked to the standard announced in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) rather than in *Kaufman v. U. S.,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). *See, Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Kaufman,* the defense counsel did make a timely motion to suppress but failed to raise the fourth amendment issue on appeal. The Supreme Court held that a court could nonetheless grant relief to a federal prisoner pursuant

to 28 U.S.C. § 2255. However, the Court noted that relief may be withheld if the federal prisoner deliberately bypassed orderly trial and appellate procedures. *Kaufman v. U. S.,* 394 U.S. at 227 n. 8, 89 S.Ct. 1068. Defendant would be held to have deliberately bypassed appropriate procedures if the procedural default was an "intentional but not inadvertent", *Wainwright v. Sykes,* 433 U.S. at 110, 97 S.Ct. 2497 (Brennan, J. dissenting), relinquishment or abandonment of a known right or privilege, *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). At the time of *Kaufman,* a motion to suppress had to be made before trial unless no opportunity to so move existed or defendant was unaware of the grounds for the motion. Fed.R.Crim.P. 41(e). Nonetheless, the *Kaufman* Court only held that § 2255 relief for a fourth amendment claim was definitely barred by a deliberate procedural by-pass before or at trial. The Court did not enumerate what other circumstances might bar § 2255 relief. 394 U.S. at 227 n. 8, 89 S.Ct. 1068. *See Whitney v. U. S.,* 513 F.2d 326 (5th Cir. 1974). In *Davis v. U. S.,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) the petitioner had failed to move to challenge the racial composition of a federal grand jury before trial as required by Fed.R. Crim.P. 12(b)(2). The Court held that his failure was not to be measured by whether the defendant had deliberately bypassed the pretrial motion procedure but whether the defendant could show "cause" why the procedure was not followed and that he suffered actual prejudice as a result. *Davis v. U. S.* 411 U.S. at 244–45, 93 S.Ct. 1577. *Kaufman* was distinguished because the express waiver provision of Rule 12 put the defendant and his counsel on clear notice that Congress intended a Rule 12 default to operate as a waiver with regard to subsequent relief, excepting upon a showing of cause acceptable to the Court. Since *Davis,* the Federal Rules of Criminal Procedure have been amended so that a motion to suppress is now governed by the express waiver provision of Rule 12, which was the subject of the *Davis* decision and not by

Rule 41 which was the basis of the *Kaufman* decision.[1]

Thus, according to Rule 12(f), failure to make a timely motion to suppress constitutes a waiver unless cause is shown to excuse the failure. The dual *Davis* tests of "cause" and "prejudice" determine whether relief from the procedural default should be granted.

■ Upon review of the trial transcript, the Court can find no special reasons which would excuse the defense counsel's failure to press for suppression. In so far as "cause" under Rule 12 and *Davis* refers to those reasons which excuse or justify an attorney's failure to comply with a procedural rule, this Court finds no "cause". Presumably defense counsel was aware of the illegal seizure but did not suspect that the government would introduce that evidence directly or indirectly. Thus, Counsel probably saw no need to move for suppression before trial. Even if this were not the case and even if this would excuse his failure to move before trial, it would not excuse his failure to press vigorously for suppression when Agent Lemon testified. Counsel's objection to marking the lab request forms for identification clearly indicates that he knew of the warrantless search and seizure and possible prejudicial effects (Transcript at 62). His failure to move to suppress cannot be fairly characterized as a strategic choice since the defendant could in no way suffer from the making of the motion. It can only be explained as counsel's opinion that the evidence was minimally prejudicial or that the motion would be futile, *see Estelle v. Williams*, 425 U.S. 501, 513–15, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), (Powell, J. concurring) or as sheer inadvertence. None of these excuse the default.

There are other kinds of "cause", besides those reasons which an attorney might offer for his default. For example, it may be that "cause" for relief from a procedural default would exist where the matter in issue goes to guilt or innocence. But that is not so in this instant case.

■ "Cause" for relief from a procedural bar under § 2255 may also arise where a court is unwilling to attribute an attorney's default to his client. Mr. Chief Justice Burger has written, "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney." *Estelle v. Williams*, 425 U.S. at 512, 96 S.Ct. at 1697. *See id.* at 513–15, 96 S.Ct. 1691 (Powell, J. concurring), at 523–31, 96 S.Ct. 1691 (Brennan, J. dissenting); *Fay v. Noia*, 372 U.S. 391, 433–34, 438–39, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Wainwright v. Sykes*, 433 U.S. at 89, 97 S.Ct. at 2508 (Court), at 91, 97 S.Ct. at 2509 (Burger, C. J. concurring), at 94, 97 S.Ct. at 2510 (Stevens, J. concurring), at 99–118, 97 S.Ct. 2513–2522 (Brennan, J. dissenting).

The petitioner has asserted that he remonstrated with his attorney before trial concerning the suppression claim. By implication, he asserts that this strategic and tactical decision was not made by "the accused and his attorney" but was made by his attorney. It appears from his allegations that the petitioner did not waive his fourth amendment rights in the constitutional sense of a personal, intelligent and knowing waiver. Rather, by his attorney's actions, there occurred a procedural default which constitutes a waiver within the (non-constitutional) meaning of Fed.R.Crim.P. 12(f).

In this case the petitioner chose his counsel, paid for him and kept him on for appeal. In such circumstances, it may be fair to attribute the actions of the lawyer to his client with regard to procedural defaults. This Court need not decide, for example, if "cause" for § 2255 relief would exist when a court-appointed counsel causes a procedural

---

1. Because the instant case involves a procedural default at trial, this Court need not and does not decide the extent to which *Stone v. Powell*, 428 U.S. 465, n. 16, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) overrules *Kaufman* with regard to § 2255 relief for issues properly raised at trial or not covered by a specific procedural rule.

default by his failure to raise a claim through mistake or inadvertence. For clearly, an indigent person with court-appointed counsel cannot be said to have chosen his counsel and his defense in the same way that a person of sufficient means to hire and fire can be presumed to bear the consequences of his choice of counsel. The individualistic assumptions that underlie compelling a defendant to bear the consequences of his attorney's actions, see *Wainwright v. Sykes*, at 91, 97 S.Ct. at 2509 (Burger, C. J. concurring); R. Cover and T. A. Aleinkoff, Dialectical Federalism: Habeas Corpus and the Court, 86 Yale L.J. 1035, 1079–81 (1977), may not be valid in a case with court-appointed counsel.

But here the petitioner chose his counsel. Without a claim that error goes to guilt or that petitioner was denied free choice of counsel, no cause exists for § 2255 relief from Rule 12(f).

The second element petitioner must show to obtain relief from the procedural default is that he suffered actual prejudice by the admission of this testimony. The Supreme Court has not given content to the "cause" and "prejudice" tests to date. *Wainwright v. Sykes*, at 90, 97 S.Ct. 2497. One possible interpretation of "prejudice" could require the petitioner simply to show that the suppressible evidence could have contributed to the jury verdict, thus incorporating the harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Francis v. Henderson*, 425 U.S. at 557, 96 S.Ct. 1708 (Brennan, J. dissenting).

The petitioner's only defense at trial to the four undisputed incidents of sale of cocaine was entrapment. The jury returned a verdict of not guilty on the first two, evidently finding a valid entrapment defense. The jury was hung on the third and returned a verdict of not guilty on the fourth. In upholding the conviction, the First Circuit concluded that the jury could conclude that: "While appellant may have been pushed into the earlier transactions, he was an agent acting of his own free will by the time of the last one." *United States of America v. Underwood*, (unpublished opinion). The appellate court cited as the basis for the jury verdict the fact that six weeks had elapsed between the third and fourth transactions and that "the evidence on this count included statements by appellant that he had sold a sizeable quantity of cocaine to other and was holding an additional bag for still others." *Id.*

The only direct evidence of petitioner's statements that he had in the past and would in the future sell to others was the testimony of Agent Lemon. The government introduced the perfectly admissible testimony of Agent Lemon that petitioner had so stated to him and that, during discussion in his apartment, petitioner showed the agent the cocaine destined for sale to others (Transcript at 57–58). Agent Lemon's further testimony that he sent this cocaine for testing, his testimony regarding the lab request form and marking the form for identification in the presence of the jury, tended to corroborate Agent Lemon's admissible testimony that petitioner showed him cocaine intended for sale to others. It may be argued that this testimony was tainted by the illegal search and seizure. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). No other evidence presented suggested that the petitioner was selling to others at the time; indeed petitioner testified, and no evidence contradicted, that he had never sold cocaine to anyone prior to the agent's first transaction. Belief that petitioner now engaged in sales of cocaine with persons other than the agent was clearly crucial to finding that free will existed in the final sale when none had existed before. However, what the defendant told Agent Lemon was properly admitted and the tainting of this testimony must center on the further testimony that the substance was sent to the laboratory for testing and the subsequent marking for identification of the laboratory forms. If this was error the Court feels it was harmless, for there was no evidence introduced that the laboratory finding showed the substance to be cocaine. Furthermore, prejudice in fact has not been shown: the courtroom procedure and testimony, at best,

played a minor role in the jury verdict. Indeed, the jury might well have concluded that the allegedly illegally obtained evidence was not cocaine since no evidence to that effect was introduced.

Because the prejudice is harmless error beyond a reasonable doubt, the Court will not grant relief from petitioner's "waiver" under Rule 12(f). We leave for another day whether relief could be granted, despite the failure to show cause for a procedural default, when a federal prisoner proves that serious prejudice in fact resulted, that the prejudice goes directly to the guilt or innocence of the prisoner and not simply to deterrence of a constitutional violation, or that the error was so plainly egregious that failure to take corrective measures impugns the integrity of the federal judicial process. *See Wainwright v. Sykes,* 433 U.S. at 94, 97 S.Ct. at 2510 (Stevens, J. concurring); *Stone v. Powell,* 428 U.S. at 517, 523 n. 16, 96 S.Ct. 3037; F.R.Crim.P. 52(b).

*Ineffective Assistance of Counsel.*

The petitioner claims that he was denied the effective assistance of counsel. The allegations made against his attorney do not begin to meet the standard for ineffective assistance of counsel: that representation was "such as to make the trial a mockery, a sham or a farce", *U. S. v. Madrid Ramirez,* 535 F.2d 125, 129 (1st Cir. 1976); *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir. 1974); *U. S. v. Benthiem,* 456 F.2d 165, 167 (1st Cir. 1972); *Bottiglio v. U. S.,* 431 F.2d 930, 931 (1st Cir. 1970) (per curiam). Nor does it violate the more lenient standard, adopted in some other circuits, requiring "reasonably competent assistance of counsel" *cf. U. S. v. Madrid Ramirez* at 129–30; *Dunker v. Vinzant,* 505 F.2d 503 (1st Cir. 1974), *cert. denied,* 421 U.S. 1003, 95 S.Ct. 2404, 44 L.Ed.2d 671; *Moran v. Hogan,* 494 F.2d at 1222 n. 4. Significantly, both these standards are more stringent than the standard used for determining whether mistakes by counsel (unless for "cause" and resulting in actual prejudice) have effectively waived federal rights, and, thus federal habeas corpus review. *Francis*

*v. Henderson* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). *See Wainwright v. Sykes,* 433 U.S. at 105, n. 6, 97 S.Ct. 2497 (Brennan, J. dissenting); *Francis v. Henderson,* 425 U.S. at 553 n. 4, 96 S.Ct. 1708 (Brennan, J. dissenting).

This Court reviews petitioner's specific allegations of counsel's incompetence in the context of a trial in which, because of the defense attorney's tactical choices, out of the four charges for sale of cocaine, the jury acquitted the petitioner on two and was hung on the third. This is enough to suggest that his counsel is altogether competent.

■ The substance of petitioner's allegation of incompetence is that the defense attorney failed to make a motion to suppress illegally seized cocaine until the pendency of trial and then failed to argue it effectively. This failure did constitute a mistake for it permitted the introduction of a small amount of cumulative evidence relevant to the entrapment defense; prior to its introduction, however, there was little to put the defense counsel on notice that the seized cocaine was in any way material because his client was not charged in connection with the seized drugs. The failure to press the motion cannot be attributed to "tactical choice"; he could not hope to gain in any way by the introduction of suppressible evidence. However, this one failure to press his objection forcefully at trial to the introduction of certain evidence does not begin to rise to the standard of incompetence.

The petitioner alleges that his attorney failed to turn over briefs and a transcript to him during the pendency of his appeal. He alleges no mistakes in the actual conduct of the appeal and this Court finds none.

■ The petitioner alleges that his attorney was ineffective in obtaining bail pending his trial and appeal. This Court cannot afford relief through § 2255 for such matters after the fact.

*Suppression of Exculpatory Evidence*

■ The petitioner alleges that the Government suppressed exculpatory evi-

dence. He refers to a policeman's report to the effect that a conversation between petitioner and a police agent was videotaped. In this conversation at a Holiday Inn, the petitioner alleges that the agent pressured him into making the cocaine sale for which he was convicted. Proof of such pressure would be exculpatory because of his entrapment defense.

It is clear that the defense attorney and defendant were aware of the videotape during the trial. On cross-examination with regard to the Holiday Inn meeting, the petitioner testified, "a Malcolm Brown did have a videotape, like it says in there, it will come out on that videotape . . ." (Trial Transcript at 394).

Moreover, on record in this Court's Chambers, the Assistant U.S. Attorney who prosecuted the case produced the police report to which petitioner referred and explained that he had given that report to the defense attorney. He further explained that the videotape referred to in the report was made across the street from the Holiday Inn merely to verify the occurrence of petitioner's meeting. The prosecutor asserted that the videotape was incapable of recording voices inside the motel from that vantage point, and, therefore, could not have been exculpatory. Moreover, because of a malfunction, the tape never recorded anything at all. These assertions were made in the presence of the defense attorney, who has now withdrawn from the case, and therefore does not constitute the kind of *ex parte* government assertions which the First Circuit has determined are probative only of whether there is a genuine or crucial factual disagreement that requires a full hearing. *Miller v. U. S.,* 564 F.2d at 105.

This Court finds that there was no suppression of exculpatory evidence.

*Perjured Testimony*

■ Petitioner claims that his conviction was based on the allegedly perjured testimony of Drug Enforcement Administration Agent Herbert J. Lemon, Jr. Petitioner alleges that Agent Lemon's statements as to the amount of cocaine were internally inconsistent. Agent Lemon initially testified that petitioner told him that he would sell him eight ounces of cocaine, but that, on the day of the sale, petitioner explained that he had sold most of these eight ounces of cocaine the night before and could now only sell two ounces. (Transcript at 55, 57). Agent Lemon later testified that Petitioner told him he had sold seven ounces but had two ounces remaining for sale. This small inconsistency as to one ounce, petitioner alleges, demonstrates that Agent Lemon perjured himself on the stand. In fact, the petitioner himself testified that he did not recall how many ounces he told Agent Lemon he had (Transcript at 401). Any inconsistency worth bringing out should have been brought out on cross-examination at trial. It cannot be urged in post-conviction proceedings. *Cf. Evans v. U. S.,* 408 F.2d 369, 370 (7th Cir. 1969).

■ Petitioner also bases his claim of perjury on alleged contradictions between Agent Lemon's testimony and that of Agent McCarthy. The Court finds no contradictory statements. Both agents agree that extra police officers were on hand during the arrest. (Transcript at 58–59). Contrary to petitioner's allegations, Agent McCarthy testified that the arrest was not made at gunpoint (Transcript at 260). Even if Agent McCarthy's testimony differed, this discrepancy would not amount to perjury. A question of perjury is not raised simply by contradicted testimony. It is for the jury to evaluate discrepancies, and either believe or disbelieve a witness. Moreover, the alleged perjured statements do not bear on issues material to the case. Whether petitioner was arrested at gunpoint and exactly how many ounces of cocaine were sold to others would not have affected the outcome of the trial. Such testimony, even if perjured, would constitute harmless error. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fed.R.Crim.P. 52(a).

The petition is denied.