John INDIVIGLIO, Petitioner-appellant,

v.

UNITED STATES of America,
Respondent-appellee.

No. 940, Docket 79–2021.

United States Court of Appeals,
Second Circuit.

Argued April 26, 1979.

Decided Nov. 26, 1979.

Certiorari Denied March 17, 1980.
See 100 S.Ct. 1326.

Frank A. Lopez, New York City, for petitioner-appellant.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y., Thomas P. Puccio, Attorney-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, EDNY, Brooklyn, N. Y. (Ellen M. Coin, Sp. Atty., Brooklyn, N. Y., of counsel), for respondent-appellee.

Before WATERMAN, FEINBERG and MANSFIELD, Circuit Judges.

WATERMAN, Circuit Judge:

The petitioner, John Indiviglio, appeals from an order entered on January 8, 1979, in the United States District Court for the Eastern District of New York (Mishler, Chief Judge) dismissing his petition brought pursuant to 28 U.S.C. § 2255 to vacate his conviction and to set aside his sentence. The judgment of conviction was entered on August 16, 1974, after trial by jury. Indiviglio was found guilty of participating in a narcotics conspiracy, in violation of 21 U.S.C. § 846, and was sentenced to a term

of twelve years imprisonment and to a special parole term of five years. The judgment of conviction was affirmed without opinion by this Court on January 29, 1975. *United States v. Matteo*, 510 F.2d 968. Certiorari was denied, 421 U.S. 998, 95 S.Ct. 2394, 44 L.Ed.2d 665 (1975).

On May 10, 1977, Indiviglio filed the present 28 U.S.C. § 2255 petition. Indiviglio based his petition to vacate the judgment of conviction on the following four claims: (1) ineffective assistance of counsel; (2) prosecutorial suppression of exculpatory evidence;[1] (3) admission of illegally seized evidence at his trial, in violation of the Fourth Amendment; and (4) his own alleged incompetence to stand trial due to his low intelligence, which compounded the deleterious effects attaching to his claim of ineffective assistance of counsel.

After a lengthy evidentiary hearing, the district court rejected all these claims and dismissed Indiviglio's 28 U.S.C. § 2255 petition. The district court found that the performance of Indiviglio's trial counsel satisfied constitutional standards; that Indiviglio, although classified as between "Dull-normal" and "Borderline" in intelligence, was competent to stand trial and to assist his attorney in his defense; that Indiviglio's Fourth Amendment claims had been waived by his failure to present them prior to trial in accordance with Fed.R.Crim.P. 12(b) and the principles of *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); and that, in light of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), Fourth Amendment claims are not cognizable in 28 U.S.C. § 2255 proceedings. We affirm the district court's order.

The proceedings culminating in the conviction of Indiviglio which he now challenges were initiated by an indictment brought against Indiviglio charging him and his co-defendants, Frank Breene and Thomas Matteo, with having conspired with one Frank Aguiar and others to violate the federal narcotics laws. Indiviglio and

---

1. The district court below found this claim to be wholly without merit, and petitioner appears to have abandoned it upon this appeal. Accordingly, we find it unnecessary to address this claim.

Breene were tried together; the case against Matteo was severed.

The first prosecution witness called at Indiviglio's trial was Tyler Somas, an admitted co-conspirator with a criminal record who received special consideration in return for his cooperation. Somas testified that he had been employed at Indiviglio's auto parts store beginning in 1965. Somas further testified that during the period of his employment with Indiviglio he had become involved in a narcotics business operated by Indiviglio and Matteo; that Indiviglio had set up laboratory equipment in a downstairs storage area of a building he owned, which equipment was employed by Indiviglio to manufacture synthetic heroin; that Somas believed that he was present in this storage area on one occasion and saw Indiviglio give drugs to Matteo; that Indiviglio met with Matteo and Somas to discuss the financing of a trip Indiviglio was to make to France to meet with a heroin supplier; and that Matteo had instructed Somas to obtain heroin from Indiviglio.

Finally, Somas testified regarding certain conversations he had had with Indiviglio at the latter's Long Island residence in the early part of 1971. Somas related that Indiviglio's drug business and money that Matteo owed Indiviglio were the principal topics of discussion. This portion of Somas's testimony was partially corroborated by his wife, Fay Somas. Mrs. Somas testified that she was present at Indiviglio's Long Island residence on one of these occasions and heard her husband and Indiviglio discussing Matteo, the millions of dollars Indiviglio claimed to have made from his drug business, and his use of foreign cars to smuggle heroin into the country.

The prosecution also called Frank Aguiar, one of the persons named in the indictment, as a witness. Aguiar testified that he had received heroin from both Tyler Somas and James McCormick, with the latter indicating to Aguiar that he in turn had received the heroin from Indiviglio.

In addition, the prosecution introduced at trial numerous items of physical evidence, consisting primarily of pieces of chemical equipment and documents and letters addressed to Indiviglio.[2] All of these items were seized during a search of Indiviglio's Long Island residence, which search was prompted indirectly by a Suffolk County police officer's discovery of Thomas Matteo, armed, severely wounded, and in possession of an attache case containing approximately $350,000, on the premises. We will discuss the circumstances surrounding the search of Indiviglio's residence and the seizure of the physical evidence more fully in connection with our treatment of Indiviglio's Sixth Amendment claims, *infra.*

Finally, as part of the prosecution's rebuttal evidence against Breene, a pair of Drug Enforcement Administration (DEA) agents testified that they saw Indiviglio and Breene in Beth's Bar & Grill on May 24, 1974.

In his petition, Indiviglio claimed that his Sixth Amendment rights were violated by the alleged egregious incompetence of his trial counsel, Ludwig Abruzzo. *United States v. Wight,* 176 F.2d 376 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), first enunciated the standard employed in this Circuit for determining the adequacy of representation by counsel:

> [U]nless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus . . . ..

---

2. The Suffolk County police officer who had conducted the search during which this physical evidence was seized was called by the prosecution as an expert witness at Indiviglio's trial. He testified that the chemical equipment seized could be used for heating, weighing and cutting heroin. In response to questions posed by the prosecution concerning the meaning of the phrase, "H&C type dresses," which appeared in several of the documents and letters seized from the Indiviglio residence, the officer testified that "H" could be an abbreviation for heroin, "C" an abbreviation for cocaine, and that the term "dresses" was a commonly used expression in the narcotics trade and referred to a quantity of narcotics.

A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.

*Id.* at 379 (footnote and citations omitted).

This Court has continued to adhere to this standard for three decades. *See, e. g., Curci v. United States,* 577 F.2d 815, 819 (2d Cir. 1978); *United States v. Bubar,* 567 F.2d 192, 201–02 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).

■ Indiviglio points to several acts and omissions at trial, which he contends demonstrate Abruzzo's incompetence: (1) inadequate cross-examination of witnesses Tyler and Fay Somas and Frank Aguiar; (2) refusal to permit Indiviglio to testify in his own behalf; (3) failure to elicit certain exculpatory and impeaching information; and (4) failure to object to the introduction of items seized pursuant to an unlawful search.

However, Abruzzo did cross-examine Tyler and Fay Somas, pointing out their long criminal records and their involvement in narcotics dealings and suggesting the existence of "deals" made with federal authorities in exchange for cooperating with the prosecution. Frank Aguiar was similarly cross-examined. Abruzzo's cross-examination of the police officer who conducted the search of Indiviglio's Long Island residence revealed the important fact that no trace of

narcotics was found on the chemical equipment seized from the premises. Abruzzo called three witnesses who testified to Indiviglio's reputation for honesty and integrity in the community. Moreover, Abruzzo called an alibi witness to testify that she had seen Indiviglio at his home in Bayside at the time when the DEA agents had placed him at Beth's Bar & Grill with Breene. The remaining information that Indiviglio claims Abruzzo failed to elicit is for the most part either peripheral to the issues and of only slight impeaching value, or wholly implausible.[3] Finally, Abruzzo's failure to call Indiviglio as a witness is understandable from counsel's viewpoint, because Indiviglio wanted to testify that he had amassed the $350,000 in cash, discovered in Matteo's possession at Indiviglio's Long Island residence, from real estate transactions, and had kept it hidden in a barrel in his basement.[4] As Chief Judge Mishler noted below with reference to this story, "[T]hat would be pretty tough for a jury to believe."

There remains Indiviglio's claim that his counsel's failure to raise certain Fourth Amendment arguments conclusively establishes counsel's incompetence. A brief factual background is necessary in order to assess the merits of this claim.

On September 27, 1972, Lt. John T. Thomsen of the Suffolk County Police Department responded to a call reporting that shots had been fired at an address subse-

---

**3.** For instance, Indiviglio faults Abruzzo for his failure to present evidence that Indiviglio had not had a heart attack in 1971, as Tyler and Fay Somas had testified, but was recovering from a different ailment at that time. Furthermore, Indiviglio complains that Abruzzo failed to prove, as he might have had he done the necessary investigation, that small foreign cars could not have been stored behind Indiviglio's auto parts store in Bayside as Tyler Somas had testified. Assuming Indiviglio's assertions are true, such "evidence" would have been of slight importance to the outcome of the case. The true nature of Indiviglio's illness has no bearing on the damaging elements of the testimony of Mr. and Mrs. Somas, (*i. e.,* the substance of their conversations with him in 1971). Likewise, the fact that small foreign cars could not be stored in the lot behind Indiviglio's business in no way would controvert the more relevant

fact, established by the testimony of Indiviglio's son, that the family did own several such vehicles.

**4.** With reference to the topic of trial strategy, this Court previously has observed:

The decision whether to place a defendant on the stand in a criminal case is always a difficult one—indeed, probably the most difficult decision for a defendant and his counsel to make. Experienced trial counsel will often differ as to the wisdom of such a course in a particular case   .    .    ..

*United States v. Garguilo,* 324 F.2d 795, 797 (2d Cir. 1963). We also note the finding of the district court below that "[t]he decision not to testify, while suggested by Abruzzo, was made by Indiviglio."

quently determined to be Indiviglio's Long Island residence. Upon Thomsen's arrival he looked in the back window of the house and saw a pair of legs sticking out from behind a refrigerator. Thomsen broke the window, entered the house, and found Thomas Matteo lying face down on the floor with five bullet wounds in his back. Matteo was holding a loaded revolver in his right hand, and an attache case containing approximately $350,000 was on the floor next to him.

Shortly thereafter, another Suffolk County police officer (Gentles) arrived on the scene to investigate the shooting. While on the premises he observed what appeared to be gambling papers, records and receipts. On the basis of these observations, Gentles then obtained a search warrant from the Suffolk County District Court to continue his search of the premises for similar items. In the process of executing this warrant, Gentles discovered items similar to those commonly used in the testing and dilution of narcotic drugs. This information was conveyed to another member of the police force (Thompson), who upon examining the paraphernalia on the premises, determined that a narcotics manufacturing operation might be involved, and accordingly sought to procure a second search warrant from the Suffolk County District Court.

To justify his request for a warrant, Thompson prepared an affidavit setting forth the facts outlined above, and additionally stating that information obtained from the Bureau of Narcotics & Dangerous Drugs revealed that Indiviglio had a "prior substantial involvement in illegal narcotics traffic." [5] On the basis of the information contained in this affidavit, a second search warrant was issued. The chemical equipment and documents offered into evidence by the government at Indiviglio's trial were obtained during the execution of this search warrant on September 29, 1972.

Subsequent to Indiviglio's trial and conviction, his wife initiated a civil action in the United States District Court for the Eastern District of New York against the police officers who conducted the searches of Indiviglio's Long Island residence. *See Indiviglio v. Blomberg,* Docket No. 75–C–1379 (E.D.N.Y.1978). In that action, Judge Bartels ruled that the initial warrantless police intrusion exceeded permissible limits, and consequently invalidated both search warrants subsequently obtained by the police.

At Indiviglio's trial, Abruzzo challenged the admission of evidence seized during these searches on the grounds that the seizure of the evidence took place before the applicable warrants were issued, which challenge properly was rejected by the district court. Abruzzo at no point attacked the admissibility of the evidence seized during these searches on the grounds that the search warrants themselves were invalid. We note, however, that appellate counsel (who was different from trial counsel) also made no attack on the validity of the search warrants. Nor did Indiviglio's present counsel set forth this argument in his 28 U.S.C. § 2255 petition. This issue was raised for the first time at the district court hearing on Indiviglio's petition only after Judge Bartels had ruled the search warrants invalid in the aforementioned civil proceeding.

■ In this situation, where the initial police intrusion was made in response to a

---

**5.** In response to Thompson's request for information concerning either John or Charles Indiviglio (petitioner was known by both names), the Bureau of Narcotics & Dangerous Drugs' "Sounder" system returned information on one Charles "Poops" Indiviglia. Although Indiviglio contends that in the absence of this incorrect information indicating a prior narcotics involvement there would have been no probable cause to support the issuance of a search warrant, he does not claim that this information was falsified deliberately or that its inclu-

sion in Officer Thompson's affidavit was anything other than a good faith mistake. *Cf. Franks v. Delaware,* 438 U.S. 154, 98 S:Ct. 2674, 57 L.Ed.2d 667 (1978) (upon substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that an evidentiary hearing be held at defendant's request).

genuine emergency situation that required prompt attention,[6] and the subsequently-issued search warrants were obtained through proper channels and appeared valid on their face,[7] we are not prepared to conclude that Abruzzo, as well as Indiviglio's two other attorneys, displayed incompetence in failing to spot this intricate issue or in neglecting to anticipate Judge Bartels' ruling. Thus, in this case, Abruzzo's failure to make a presumably meritorious pre-trial suppression motion does not automatically lead to the conclusion that he was either ineffective or incompetent in representing Indiviglio at trial.

Accordingly, in light of the above, and having carefully examined the record as a whole, we cannot conclude that Indiviglio's trial was a farce or a mockery of justice, nor was representation of counsel such as would shock the conscience of the court.[8] Moreover, Chief Judge Mishler, who observed the proceedings both at Indiviglio's trial and at the hearing on this petition, commented that Abruzzo "did a pretty good job" in conducting Indiviglio's defense.[9] We are convinced that the district judge's conclusion as to the adequacy of counsel is not erroneous and we hold that Indiviglio has not established his claim of ineffective assistance of counsel.

As to Indiviglio's claim that his low intelligence and mental incompetence to stand trial exacerbated the ineffective assistance of counsel, we observe that Chief Judge Mishler ordered a psychiatric examination to assess Indiviglio's ability to stand trial, and thereafter conducted a hearing on this issue. After listening to the testimony of two psychiatrists and a number of lay

---

**6.** *See Wayne v. United States,* 115 U.S.App. D.C. 234, 241, 318 F.2d 205, 212 (D.C.Cir. 1963) (opinion of Burger, J.). *Cf. Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (fact that homicide occurred on searched premises did not, of itself, give rise to such exigent circumstances as to justify a four-day warrantless search of the premises); *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (municipal officials, although justified in making a warrantless entry into a building to fight a fire, may remain there only for a reasonable time to investigate the cause of the blaze without proceeding in the traditional manner to obtain a search warrant for the premises).

**7.** As Chief Judge Mishler noted below:

This is not a case where police officers, without a warrant and without any viable claim of exigency broke into a home in order to seize evidence. The police were lawfully on the premises. The warrants were obtained from a state court judge and appeared valid on their face.

**8.** Indiviglio urges that we apply a more lenient standard, similar to those prevailing in the Fifth Circuit ("counsel reasonably likely to render *and rendering* reasonably effective assistance," *United States v. Fessel,* 531 F.2d 1275, 1278 (5th Cir. 1976)) and Ninth Circuit ("reasonably competent and effective representation," *Cooper v. Fitzharris,* 586 F.2d 1325, 1328 (9th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979)). *See also* cases cited in *Rickenbacker v. Warden, Auburn Correct. Facility,* 550 F.2d 62, 65–66 (2d Cir. 1976). Although the Second Circuit previously has expressed the possibility of

reevaluating our position in this area, *see e. g., Rickenbacker, supra,* 550 F.2d at 66, we do not feel that this is an appropriate time to do so, inasmuch as we find, as did the *Rickenbacker* court, that counsel's performance in the case at bar meets even the more liberal standards prevailing in other Circuits.

**9.** A first step in evaluating a claim of ineffective assistance of counsel is to examine the strength of the prosecution's case. *See LiPuma v. Comm'r, Dep't of Corrections,* 560 F.2d 84, 91 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). In the case at bar, we already have detailed the overwhelming proof of Indiviglio's participation in the alleged narcotics conspiracy. We think Judge Friendly accurately depicted the dilemma facing defense attorneys in such a situation when he observed:

When, as here, the prosecution has an overwhelming case . . . there is not too much the best defense attorney can do. If he simply puts the prosecution to its proof and argues its burden to convince the jury beyond a reasonable doubt, the defendant may think him lacking in aggressiveness, and surely will if conviction occurs. If he decides to flail around and raise a considerable amount of dust, with the inevitable risk that some may settle on his client, the defendant will blame him if the tactic fails, although in the rare event of success the client will rank him with leaders of the bar who have used such methods in some celebrated trials of the past.

*United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970).

witnesses, the district court concluded that although Indiviglio was below average in intelligence, he nevertheless had the mental capacity to understand the charges against him, to discuss the evidence against him and to prepare for trial. The district court further found that Indiviglio's mental deficiency did not substantially affect the ability of counsel to render effective service. Having reviewed the transcript of the hearing below, we conclude that Chief Judge Mishler's findings of fact on this matter are not clearly erroneous.

■ Finally, we address Indiviglio's Fourth Amendment claim, previously raised in connection with his ineffective assistance of counsel argument, a claim which he contends should be a sufficient ground by itself alone to justify a collateral attack on his conviction. As mentioned above, however, Indiviglio's present theory as to the invalidity of the search warrants, which tracks the reasoning expressed by Judge Bartels in ruling on the identical issue in the related civil proceeding, never was presented in Indiviglio's original trial court proceedings, but was raised for the first time at the hearing below upon the present petition.

As Chief Judge Mishler correctly noted, Fed.R.Crim.P. 12(b) requires that motions to suppress evidence be made prior to trial.

10. The pertinent provisions of current Rule 12(f) originally were contained in Rule 12(b)(2). The provisions of Rule 12 were renumbered by amendments adopted in 1974.

11. Indiviglio also seeks to escape the application of these waiver provisions to his Fourth Amendment claim by relying on *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), and asserting that he should not be prevented from raising this claim in his 28 U.S.C. § 2255 petition because he alleges he did not knowingly and deliberately bypass this claim in the trial court proceedings.

We find Indiviglio's reasoning to be completely without merit. *Kaufman* clearly is inapposite to the case at bar, as the defendant there, unlike Indiviglio, had raised his objection in a timely fashion at the trial court level but had failed to raise the issue again on appeal. Moreover, the *Davis* Court explicitly distinguished *Kaufman* on the ground that *Kaufman,* unlike *Davis* and the present case, did not involve an express statutory waiver provision. *See* 411 U.S. at 239–40, 93 S.Ct. 1577.

In addition, Fed.R.Crim.P. 12(f) [10] provides that "Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." This Circuit has interpreted Rule 12(b) to mean that a failure to assert before trial a particular ground for a motion to suppress certain evidence operates as a waiver of the right to challenge the admissibility of the evidence on *that* ground.[11] *See United States v. Braunig,* 553 F.2d 777, 780–81 (2d Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 277 (1977); *see also United States v. Rollins,* 522 F.2d 160 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); *United States v. Indiviglio,* 352 F.2d 276 (2d Cir. 1965), *cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). Moreover, as the Supreme Court held in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the waiver provisions of Rule 12(b) apply regardless of whether an accused seeks to raise his constitutional claims for the first time on direct appeal from his conviction or raises them first on his collateral attack on that conviction in a 28 U.S.C. § 2255 petition. As the *Davis* Court stated:

Finally, we note that both courts and commentators have pointed out the distinction between true waivers in which a substantive right is extinguished because a defendant consciously, intelligently and voluntarily relinquishes it (*i. e.,* waivers subject to the *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), standard), and a waiver of the type involved here, which is an inadvertent loss of a constitutional right by procedural default or forfeiture, occurring by operation of law without regard to the intent of the defendant. *See, e. g., Wainwright v. Sykes,* 433 U.S. 72, 94, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring); *Estelle v. Williams,* 425 U.S. 501, 508 n.3, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); Friendly, *Is Innocence Irrelevant?,* 38 U.Chi.L. Rev. 142, 155–56 (1970); Hill, *The Forfeiture of Constitutional Rights in Criminal Cases,* 78 Colum.L.Rev. 1050 (1978); Westen, *Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure,* 75 Mich.L.Rev. 1214 (1977).

We believe that the necessary effect of the congressional adoption of Rule 12(b)(2) [12(f)] is to provide that a claim once waived pursuant to that Rule may not later .be resurrected, either in the criminal proceedings or in federal habeas, in the absence of the showing of "cause" which that Rule requires.

411 U.S. at 242, 93 S.Ct. at 1582–83.

Indiviglio asserts that the necessary showing of "cause" required to excuse the failure to present his Fourth Amendment claim at trial is supplied by the alleged incompetence of his counsel in neglecting to raise this claim at trial. We note that it is irrelevant whether counsel's failure to raise at trial Indiviglio's present Fourth Amendment claim is characterized either as a matter of sheer inadvertence or as one of professional judgment that a motion on such grounds would have been unsuccessful,[12] because neither is sufficient to constitute "cause" within the meaning of Rule 12 and *Davis,* even assuming that Indiviglio's present Fourth Amendment claim is meritorious. *See Polizzi v. United States,* 550 F.2d 1133, 1138 (9th Cir. 1976) (good faith ignorance of legal grounds for objection does not excuse a failure to comply with Rule 12(b)(2) [12(f)]); *Lumpkin v. Ricketts,* 551 F.2d 680, 682–83 (5th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977) (petitioner's only allegation of cause—that trial counsel provided ineffec-

tive assistance in failing to make an objection—must be rejected; otherwise, requirement of showing cause would effectively be eliminated).

Without some showing that counsel's mistakes were so egregious as to amount to a Sixth Amendment violation, a mere allegation of error by counsel is insufficient to establish "cause" to excuse a procedural default.[13] As we already have concluded, the incidences Indiviglio cites here to support his claim of ineffective assistance of counsel, whether viewed separately or collectively, amount to little more than ineffectiveness by hindsight.[14] We agree with Chief Judge Mishler's characterization of Indiviglio's strategy as a "bootstrap effort to evade the requirement of the rule." Therefore, we hold that inasmuch as petitioner was aware of the existence of the search warrants and the government's intention to introduce the fruits of the search as evidence at his trial, and because Indiviglio had ample opportunity to present his claim in a timely manner and to elicit prior to trial the facts upon which to base his present theory, interests of finality in criminal judgments and the necessity of sanctions to effectuate orderly rules of procedure mandate that he be precluded from raising his Fourth Amendment claim at this late date.[15]

We affirm the order of the district court.

12. We exclude the possibility that counsel's failure to include this ground in his motion to suppress was intended to be a deliberate strategic maneuver, for we can perceive no tactical advantage to be gained thereby.

13. Because we find here that the alleged errors of counsel do not constitute ineffective assistance of counsel, we need not and do not reach the question of whether incompetence of counsel ever will suffice to establish cause for failure to assert a claim such as would relieve the client of the normal consequences of that failure. *See, e. g., Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978). *Compare Sincox v. United States,* 571 F.2d 876 (5th Cir. 1978) (defendant not precluded from raising in his 28 U.S.C. § 2255 petition a claim that he was convicted on a less than unanimous jury verdict by reason of his counsel's failure to raise this objection at trial where

it is shown that defendant's trial counsel rendered ineffective assistance) *with United States v. Underwood,* 440 F.Supp. 499, 503 (D.R.I. 1977) ("Without a claim that error goes to guilt or that petitioner was denied free choice of counsel no cause exists for § 2255 relief from Rule 12(f).").

14. As we observed in *Rickenbacker, supra* note 8, "[t]he courts cannot guarantee errorless counsel or counsel who cannot be made to seem ineffective by hindsight." 550 F.2d at 66.

15. We wish to emphasize that we base our affirmance of the district court's dismissal of Indiviglio's Fourth Amendment claim solely on that court's discussion of the application of the Rule 12(f) and *Davis* waiver provisions to that claim. We neither address the correctness of the district court's discussion of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) in connection with this case, nor do we

**632**

MANSFIELD, Circuit Judge (Concurring):

I concur in Judge Waterman's characteristically thorough and carefully-considered opinion. However, insofar as it holds that Indiviglio was not denied effective assistance of counsel, I concur not merely because his attorney's assistance meets the "shock the conscience—farce and mockery of justice" standard that remains the criterion in this Circuit, see *United States v. Wight* and decisions cited at page 627, *supra,* but because it also satisfies the more liberal and lenient standards adopted by 9 out of the 10 other circuits. *United States v. DeCoster,* 159 U.S.App.D.C. 326, 331, 487 F.2d 1197, 1202 (D.C. Cir. 1973) ("reasonably competent assistance"); *United States v. Bosch,* 584 F.2d 1113, 1120–21 (1st Cir. 1978) ("reasonably competent assistance"); *Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970) (en banc) ("customary skill and knowledge"); *Marzullo v. Maryland,* 561 F.2d 540, 543–44 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) ("normal competency"); *United States v. Gray,* 565 F.2d 881, 887 (5th Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978) ("reasonably effective counsel"); *United States v. Toney,* 527 F.2d 716, 720 (6th Cir. 1975), *cert. denied sub nom. Pruitt v. United States,* 429 U.S. 838, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976) ("reasonably effective assistance"); *United States ex rel. Williams v. Twoney,* 510 F.2d 634, 641 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975) ("minimum standard of professional representation"); *Morrow v. Parratt,* 574 F.2d 411, 412–13 (8th Cir. 1978) ("customary skills and diligence"); *Cooper v. Fitzharris,* 586 F.2d

1325, 1327 (9th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979) ("reasonably competent and effective").

In view of the fact that 9 circuits have adopted a different test along the lines of "reasonable competence," leaving only the Second and Tenth Circuits adhering to the old rule, I believe that in an appropriate case this court should re-evaluate the standard to be applied, as we suggested in *Rickenbacker v. Warden, Auburn Correctional Facility,* 550 F.2d 62, 66, 67 (2d Cir. 1976), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). However, this is not an appropriate case for the reason that the conduct of Indiviglio's counsel satisfied all of the above tests.

---

decide the extent to which *Stone* may be applicable to 28 U.S.C. § 2255 proceedings.

In addition, although we are cognizant of suggestions that procedural defaults involving Fourth Amendment claims never ought to be excused for "cause" on collateral attack because such claims do not go to basic issues of guilt or innocence and do not impugn the integrity of the fact-finding process, *see generally* Friendly, *supra* note 11; *but see United States v. Easter,* 539 F.2d 663 (8th Cir. 1976), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d

109 (1977), we have found here that Indiviglio has failed to make the requisite showing of "cause" in either his Sixth or Fourth Amendment claims, and therefore we need not address the merits of such a categorical position.

Finally, in view of our disposition of this case on the element of "cause," we do not reach the question of whether Indiviglio could have succeeded in establishing the second element necessary to avoid application of the waiver provisions—actual prejudice.